IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALLSTATE VEHICLE AND PROPERTY,
INSURANCE COMPANY, an Illinois
Corporation,

                              Plaintiff,

        v.

YUKIKO MEYDEN, an individual, and
MICHAEL MEYDEN, an individual, and
E.H., by and through her biological father and
Guardian ad litem, Scott Horsfield,

                                          Defendants.

Case No. 3:25-cv-00069-JR

FINDINGS AND
RECOMMENDATION

RUSSO, Magistrate Judge:

    Via this action, plaintiff Allstate Vehicle and Property Insurance Company seeks a declaration that it is not obligated to provide coverage or a defense to defendants Michael and Yukiko Meyden in an underlying action between those individuals and defendant E.H., filed in

Page 1 – FINDINGS AND RECOMMENDATION

Clackamas County Circuit Court. The Court stayed claims regarding indemnity coverage pending the outcome of that underlying proceeding. Order, at 8 (doc. 41). Pursuant to Fed. R. Civ. P. 56, the parties now cross-move for summary judgment in regard to plaintiff's duty to defend. For the reasons set forth below, plaintiff's motion should be granted and defendants' motion should be denied.

## BACKGROUND

### I.    *Underlying Incident*

In November 2024, E.H., through her parent and guardian ad litem, brought an action against the Meydens relating to smoothies containing Temazepam that Mr. Meyden served during a sleepover in August 2023. Compl. Ex. 1, at ¶¶ 8-9 (doc. 1-1).

Specifically, E.H. alleges the Meydens' minor child invited her and two other minor children to a sleepover at the Meyden home, during which Mr. Meyden made mango smoothies for the children, which he then insisted they drink. *Id.* Without E.H.'s knowledge or consent, Mr. Meyden had added the Schedule-IV controlled substance Temazepam, a sedative prescribed for insomnia, to the smoothie. *Id.* at ¶ 9. Soon after drinking the smoothies, E.H. and two other minor children fell asleep, but one of the children declined to drink the smoothie Mr. Meyden prepared and stayed awake to observe him behaving "oddly and in a manner that was concerning to them." *Id.* at ¶ 10. The minor child contacted a family friend to pick them up from the Meyden home, and ultimately, all the minor children were picked up from the home. *Id.* E.H. and the other guests were taken for evaluation and treatment at a nearby hospital, where a urine analysis confirmed the presence of Temazepam in E.H.'s blood stream. *Id.* at ¶ 11.

Page 2 – FINDINGS AND RECOMMENDATION

## II.    *Criminal Charges and Plea*

In June 2024, Mr. Meyden plead guilty to three counts of causing another person to ingest a controlled substance under Or. Rev. Stat. § 475.908(1). Second Foley Decl. Ex. 2, at 2-5 (doc. 46-2). A person violates Or. Rev. Stat. § 475.908(1) "if the person knowingly or intentionally causes the other person to ingest, other than by administering or dispensing, a controlled substance analog without consent of the other person."

## III.    *E.H.'s Claims*

In the Clackamas County lawsuit, E.H. brought claims against Mr. Meyden for battery and intentional infliction of emotional distress, and against both Meydens for negligence and negligent infliction of emotional distress. Compl. Ex. 1, at ¶¶ 17-36 (doc. 1-1). E.H. bases her battery claim on Mr. Meyden causing her to ingest a controlled substance with intent to cause harmful or offensive contact. *Id.* at ¶ 18. Her intentional infliction of emotional distress claim is premised on Mr. Meyden causing her to inject a controlled substance with intent to inflict severe emotional distress upon her. *Id.* at ¶ 22. The negligence springs from the Meydens' alleged failure to meet the heightened duty of care they owed to E.H. as an invited guest in their residence in one or more of the following ways:

a. Failure to store a Schedule-IV controlled substance in a secure location in their home.

b. Failure to supervise defendant Michael Meyden while he prepared the smoothies for [E.H.] and the other minor children knowing defendant Michael Meyden was in possession of a Schedule-IV controlled substance.

c. Failure to warn [E.H.] that defendant Michael Meyden would add a Schedule-IV controlled substance to the smoothies.

d. Adding and/ or allowing a Scheduled-IV controlled substance to be added to plaintiff's smoothie unreasonably disregarded the foreseeable outcome that the substance could cause injury[.]

Page 3 – FINDINGS AND RECOMMENDATION

*Id.* at ¶ 29. In her negligent infliction of emotion distress claim, E.H. again refers to the heightened duty of care and asserts that "[d]efendants should have understood causing a minor child to ingest a controlled substance would cause physical and psychological injuries." *Id.* at ¶¶ 33-34.

### IV.    *Insurance Policy*

At all relevant times, a house and home policy existed between plaintiff and the Meydens. *See generally* Second Foley Decl. Ex. 1 (doc. 46-1). The policy covers damages an insured person becomes legally obligated to pay due to bodily injury or property damage resulting from an applicable "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**." *Id.* at 28-29, 47. However, the policy excludes injury or property damage "intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions, of any **insured person**." *Id.* at 47. That exclusion applies even if:

   a)  such **insured person** lacks the mental capacity to govern his or her conduct;

   b)  such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

   c)  such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

*Id.* The policy also imposes joint obligations on the insureds.

   This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

   This policy imposes joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

Page 4 – FINDINGS AND RECOMMENDATION

*Id.* at 29.

## V.    **Present Matter**

Plaintiff initiated this action in January 2024, seeking a declaratory judgment that it is not obligated under the policy to indemnify or defend the Meydens in the Clackamas County lawsuit. Compl. at 12 (doc. 1). The Meydens each brought counterclaims against plaintiff for breach of contract. Yukiko Meyden Answer at 4-7 (doc. 14); Michael Meyden Answer at 4-5 (doc. 18).

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)-(c). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

**DISCUSSION**

Plaintiff argues that it has no duty to defend Mr. Meyden in the underlying matter because Mr. Meyden "intended the very harm of impairment to the child's body he accomplished," and, thus, there was no "occurrence" within the terms of the policy. Pl.'s Mot. Summ. J. 18-19 (doc. 45). Plaintiff asserts the policy's intentional and criminal acts exclusions apply to Mr. Meyden's acts as pleaded in the Clackamas County lawsuit. *Id.* at 14-18. Plaintiff contends that the Court should infer from Mr. Meyden's acts the intent to injure E.H. *Id.* at 24. Further, plaintiff argues that the policy's joint obligations clause excludes coverage for Ms. Meyden in matters concerning Mr. Meyden's criminal conduct. *Id.* at 27-28.

In contrast, the Meydens contend plaintiff is obligated to defend them because the relevant question for both the "occurrence" analysis and the exclusion analysis is "whether the Underlying Complaint allows for the possibility that a jury at trial could find that Michael Meyden acted without a specific intent to harm E.H. but is liable anyway[,]" and, they argue, "that possibility cannot be ruled out[.]" Defs.' Resp. & Cross-Mot. Summ. J. at 11-12 (doc. 48). While the Clackamas County lawsuit includes allegations of intentional harm, the Meydens rely on the negligence claims in that complaint to fall within the policy under Oregon's "lesser included offense" doctrine. Defs.' Resp. & Cross-Mot. Summ. J. at 12-13. They do not address plaintiff's joint obligation argument. As discussed herein, the Court finds the lack of a covered occurrence in this case to be dispositive.

### *Duty to Defend Michael Meyden*

#### A.  Legal Standard

"State law determines the court's interpretation of insurance policies and an insurer's duty to defend and indemnify." *Allstate Ins. Co. v. Morgan*, 123 F. Supp.3d 1266, 1272-73 (D. Or. 2015)

(citing *Larson Const. Co. v. Or. Auto. Ins. Co.*, 450 F.2d 1193, 1195 (9th Cir. 1971)). In Oregon, the duty to defend is distinct from, and broader than, the duty to indemnify under the terms of the insurance policy. *Id.* at 1273 (citing *Ledford v. Gutoski*, 319 Or. 397, 403, 877 P.2d 80 (1994)). The allegations in a pleading trigger an insurer's duty to defend, while facts establishing the coverage trigger the duty to indemnify. *Id.* (citing *Nw. Pump & Equip. Co. v. Am. States Ins. Co.*, 144 Or. App. 222, 227, 925 P.2d 1241 (1996)). "Although an insurer's duty to defend depends on the pleading, the insurer has a duty to defend the insured only 'if the claim made against the insured is one covered by the insurer." *Morgan*, 123 F. Supp. 3d at 1273 (citing *Casey v. Nw. Sec. Ins. Co.*, 260 Or. 485, 489, 491 P.2d 208 (1971)). "[T]here are occasions when an insurer has a duty to defend, but if trial ends with a verdict that is not covered by the policy, then the insurer has no duty to indemnify." *W. Hills Dev. Co. v. Chartis Claims, Inc.*, 360 Or. 650, 652-53, 385 P.3d 1053 (2016). Also, "there are times when an insurer does not have a duty to defend, but if the trial ends with a judgment that is covered by the policy, then the insurer will have a duty to indemnify." *Id.* at 653.

The insured bears the burden to prove coverage while the insurer bears the burden to prove a coverage exclusion. *ZRZ Realty Co. v. Bene. Fire & Cas. Ins. Co.*, 349 Or. 117, 127, 241 P.3d 710 (2010) (citations omitted).

Courts determine an insurer's duty to defend by comparing the complaint against the insurance policy, under what is known as the "four-corners" rule, or sometimes the "eight corners" rule. *W. Hills*, 360 Or. at 653. Under the rule, the insurer has a duty to defend "[i]f the allegations in the complaint assert a claim covered by the policy" and does not have a duty to defend "[i]f the allegations do not assert a claim covered by the policy[.]" *Id.*

Page 7 – FINDINGS AND RECOMMENDATION

The court interprets exclusion clauses narrowly and construes any ambiguity in such clauses strictly against the insurer. *Morgan*, 123 F. Supp.3d at 1273. For a court to resort to such a construction requires more than two plausible interpretations, but rather two or more plausible interpretations that continue to be reasonable after other efforts, including examining the term "in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 470, 836 P.2d 703 (1992) (citation omitted).

### B.  "Occurrence"

#### i.  Legal Standard

As discussed, the policy at issue here obligates plaintiff to defend Mr. Meyden in legal proceedings resulting from an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**." Second Foley Decl. Ex. 1 at 26-27, 47 (doc. 46-1). The policy does not define what constitutes an "accident." Generally, "an event comes within the common understanding of an 'accident' if it is unforeseen, unexpected, unintended or the like." *Safeco Ins. Co. of Am. v. House*, 80 Or. App. 89, 96, 721 P.2d 862 (1986) (citations omitted). "If the injury was intentionally inflicted, it was not the result of an accident and, accordingly, did not arise from an occurrence covered under the policy." *Drake v. Mut. of Enumclaw Ins. Co.*, 167 Or. App. 475, 481, 1 P.3d 1065 (2000) (citation omitted). "Injuries resulting from intentional acts are excluded from insurance coverage when the insured intended to cause the particular injury or harm, as opposed to merely intending the act." *Ledford*, 319 Or. at 401.

### ii. Battery and Intentional Infliction of Emotional Distress Claims

Applying that standard to the Clackamas County complaint, E.H.'s claims for battery and for intentional infliction of emotional distress fall outside of the policy's coverage. The battery claim alleges Mr. Meyden intended to cause harmful or offensive contact to E.H., while the intentional infliction of emotional distress claim alleges that he intended to inflict severe emotional distress to E.H. Compl. Ex. 1, at ¶¶ 18, 22. (doc. 1-1). Acts intending harm do not constitute an "occurrence" as defined by the policy.

### iii. The Lesser Included Offense Doctrine and E.H.'s Negligence Claims

Under Oregon's "lesser included offense" doctrine, "[i]f the complaint, without amendment, may impose liability for conduct covered by the policy, the insurer is put on notice of the possibility of liability, and it has a duty to defend." *Ferguson v. Birmingham Fire Ins. Co.*, 254 Or. 496, 507, 460 P.2d 342 (1969). Where "a complaint contains two counts, one based upon willful conduct and one based upon negligent conduct, the insurer would have a duty to defend because of the allegation falling within the policy coverage." *Id.* at 506.

A complaint that does not allege that the insured intentionally caused an injury may still compel an inference of intent "by the very gravamen of its allegations." *Drake*, 167 Or. App. at 482 (citing *Nielsen*, 283 Or. at 281). "[T]he key question is whether the court can reasonably interpret the allegations to include an incident or injury that falls within the coverage of the policy." *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 117, 293 P.3d 1036 (2012) (citation omitted). If the complaint does not allege facts indicating what conduct was involved, for instance, it would be unreasonable to require coverage. See *Falkenstein's*, 91 Or. App. at 279 n.2. "It is the substance of the complaint, not its form, that is at the heart of the inquiry." *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 91, 37 P.3d 148 (2001) (citation omitted). "Even as to claims for which an

intention to injure need not be inferred solely from the nature of the theory of recovery, the pleading itself may allege facts demonstrating an intention to injure." *Drake*, 167 Or. App. at 482 (citations omitted). It follows that when a claim is labelled as negligence but the underlying conduct is intentional the insurer has no duty to defend.

E.H. alleges two claims labelled as negligence, one for negligence and one for negligent infliction of emotional distress. Compl. Ex. 1, at ¶¶ 28-36. (doc. 1-1). The negligence claim rests on the alleged failure of either Mr. Meyden or Ms. Meyden to meet the heightened duty of care they owed to E.H. as an invited guest in their residence in one or more of the following ways:

a. Failure to store a Schedule-IV controlled substance in a secure location in their home.

b. Failure to supervise defendant Michael Meyden while he prepared the smoothies for [E.H.] and the other minor children knowing defendant Michael Meyden was in possession of a Schedule-IV controlled substance.

c. Failure to warn [E.H.] that defendant Michael Meyden would add a Schedule-IV controlled substance to the smoothies.

d. Adding and/ or allowing a Scheduled-IV controlled substance to be added to plaintiff's smoothie unreasonably disregarded the foreseeable outcome that the substance could cause injury[.]

*Id.* at ¶ 29. In the claim for negligent infliction of emotion distress, E.H. again refers to the heightened duty of care and asserts that "[d]efendants should have understood causing a minor child to ingest a controlled substance would cause physical and psychological injuries." *Id.* at ¶¶ 33-34.

Looking only to the allegations in the claims, they are true negligence claims under which a jury could determine that Mr. Meyden is liable for harm to E.H. without finding that he intentionally harmed her.

####    iv.  **Inferred Intent**

The Oregon Supreme Court recognizes that there exist "some intentional acts the nature of which is such that it must necessarily be concluded that there was an intention to injure." *Nielsen v. St. Paul Cos.*, 283 Or. 277, 281, 583 P.2d 545 (1978). Oregon courts have applied that inference in certain circumstances. See *Cunningham & Walsh, Inc. v. Atl. Mut. Ins. Co.*, 88 Or. App. 251, 255, 744 P.2d 1317 (1987), *rev. den.* 305 Or. 102, 750 P.2d 496 (1988) (deceit); *Mut. of Enumclaw v. Merrill*, 102 Or. App. 408, 412, 794 P.2d 818 (1990), *rev. den.* 310 Or. 475, 799 P.2d 646 (adult sexual abuse of a minor); *Falkenstein's Meat Co. v. Md. Cas.*, 91 Or. App. 276, 280, 754 P.2d 621 (1988) (retaliation based on claim of intentional discriminatory conduct). "The question is whether the insured specifically intended the harm suffered, or, alternatively, engaged in an act so certain to cause the particular kind of harm that the court will say that the insured intended the harm." *Mut. of Enumclaw Ins. Co. v. Gutman*, 172 Or. App. 528, 534, 21 P.3d 101, *rev. den.* 333 Or. 162, 39 P.3d 192 (Table) (citing *Drake*, 167 Or. App. at 483).

Oregon has not addressed whether the inference of intentionality applies to causing ingestion of a controlled substance. In a diversity action, where the state's highest court has not decided an issue, the federal court must predict how that court would decide the question. *High Country Paving, Inc. v. United Fire & Cas.*, 14 F.4th 976, 978 (9th Cir. 2021). That analysis requires federal courts to "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels Int'l.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted).

The Oregon Supreme Court has explained that the inference had led to an objective "natural and ordinary consequence" inquiry contrary to the correct analysis, in which a court focuses on the insured's subjective intent. *Allstate Ins. Co. v. Stone*, 319 Or. 275, 279, 876 P.2d 313 (1994). Instead, the court explained, "the court should only infer that the insured had a subjective intent to

cause harm or injury as a matter of law when such subjective intent is the only reasonable inference that may be drawn from the insured's conduct. *Id.* (citation omitted).

Here, the complaint includes the allegation that Mr. Meyden pleaded to and was found guilty on three counts of causing another person to ingest a controlled substance under Or. Rev. Stat. § 475.908. Compl. Ex. 1, at ¶¶ 14-16. (doc. 1-1). A person violates Or. Rev. Stat. § 475.908(1) "if the person knowingly or intentionally causes the other person to ingest, other than by administering or dispensing, a controlled substance analog without consent of the other person." Thus, the Clackamas County complaint includes the allegation that Mr. Meyden knowingly or intentionally committed the act on which all four of the claims are based.

Not only was Mr. Meyden surreptitiously causing E.H. to ingest a controlled substance prescribed for insomnia certain to cause E.H. harm, but the only reasonable inference to draw from his conduct is that he intended to harm E.H. It contravenes reason to accept that an adult could add a sleeping drug to smoothies for minors without their knowledge absent an intent to deprive them of their mental and physical capacities. Because all of E.H.'s claims against Mr. Meyden are for damages resulting from those actions, through which Mr. Meyden intended to harm E.H., there is no "occurrence" as defined in the policy and plaintiff has no duty to defend Mr. Meyden. As a result, there is no need to address the intentional and criminal act exclusions.

### *Duty to Defend Yukiko Meyden*

The negligence claims in the Clackamas County complaint include allegations directed at Ms. Meyden, including failing to securely store a Schedule-IV controlled substance, failure to supervise Mr. Meyden, failure to warn E.H. that Mr. Meyden would add the controlled substance to the smoothies, and not preventing physical and psychological injuries to E.H. Compl. Ex. 1, at

Page 12 – FINDINGS AND RECOMMENDATION

¶¶ 28-36. (doc. 1-1). Neither claim includes any allegations of intentional conduct on Ms. Meyden's part.

However, plaintiff directs the Court to the policy's joint obligations clause, which imposes joint obligations binding to another insured person or their resident spouse as to the insured person's responsibilities, acts, failures to act, and omissions. Second Foley Decl. Ex. 1 at 29 (doc. 46-1). Both Mr. Meyden and Ms. Meyden are listed as named insureds on the policy. *Id.* at 1. Plaintiff contends that because the policy's intentional acts exclusion applies to the acts of any insured person the exclusion applies to Ms. Meyden equally.[1]

Plaintiff points to Ristine ex rel. Ristine v. Hartford Insurance Co. of Midwest, 195 Or. App. 226, 97 P.3d 1206 (2004) to support that analysis. That case involved a coverage exclusion for injuries "arising out of sexual molestation," and included a severability clause applying the insurance "separately to each insured." *Id.* at 228-29. The insureds were a wife and husband, and the underlying complaint included claims against the husband for repeatedly sexually abusing a minor, as well as an allegation that the wife was liable for negligently failing to disclose that the husband was a sex offender and for allowing the husband to be alone with the minor, in addition to a claim against the wife for reckless infliction of emotional distress because she allowed the minor to spend the night at the home. *Id.* at 229. The plaintiffs, who were the plaintiffs in the underlying action acting as assignee of rights of the wife, argued that the insurer was obligated to defend and indemnify the wife because the exclusion applied only to sexual molestation by the wife and, since the sexual molestation was instead committed by the husband, the exclusion should

---

[1] Because Mr. Meyden's acts do not constitute an "occurrence" within the terms of the policy, this analysis does not reach the intentional acts exclusion. However, as the Meydens argue, the analysis Oregon courts use to determine whether an insured's acts constitute an "occurrence" is the same analysis those courts use to determine whether those acts are excluded from coverage as an intentional act. Defs.' Resp. & Cross-Mot. Summ. J. at 11-12 (doc. 48).

Page 13 – FINDINGS AND RECOMMENDATION

not apply to the wife. *Id.* at 229-30. The court explained that "when an exclusion is intended to apply to an act committed by, or on the premises of, an insured, the policy expressly says so by referring to 'the insured[,]' but "the one at issue in this case contains no such qualification[,]" and instead excluded coverage for bodily injury "arising out of sexual molestation" "without any reference to the act of molestation having been committed 'by an insured.'" *Id.* at 232. The court concluded that the coverage exclusion applied to the wife. *Id.* at 235.

Plaintiff contends that the same reasoning applies to the coverage exclusion for intentional or criminal acts committed by any insured person in the policy it issued to the Meydens. Pl.'s Mot. Summ. J. at 26-27 (doc. 45). Thus, it reasons, plaintiff is not required to provide defense coverage for Ms. Meyden in the Clackamas County lawsuit. *Id.* The Meydens do not respond to plaintiff's argument or cite any authority to the contrary.

In the absence of any conflicting authority or argument, the Court agrees with plaintiff that the term "any insured" in the intentional or criminal acts exclusion excludes coverage for all intentionally caused injuries caused by any person insured under the policy, particularly in light of the joint obligations clause mutually binding insureds to each other's responsibilities, acts, and omissions. Based on the policy's unambiguous language, there is no coverage for Ms. Meyden for harms resulting from Mr. Meyden's intentionally harmful acts.

## RECOMMENDATION

For the reasons stated herein, plaintiff's motion for summary judgment (doc. 45) should be granted and the Meydens' cross-motion for partial summary judgment (doc. 48) should be denied. Plaintiff's request for oral argument is denied as unnecessary. As a result, plaintiff has no duty to defend the Meydens in regard to the underlying action. The parties shall confer and provide a proposed case management schedule within 30 days of the District Judge's ruling.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 2nd day of March, 2026.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge